**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERNEST P., Plaintiff, | ) | No. 25-cv-8798 |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ernest P.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 16] is GRANTED and Defendant's motion for summary judgment [Dkt. 17] is DENIED; the Court hereby remands this matter for further proceedings.

## I. Procedural History

On June 8, 2022, Plaintiff filed an application for Disability Insurance Benefits, alleging disability beginning September 1, 2020. [Administrative Record ("R.") 170-71.] On June 6, 2024, an Administrative Law Judge ("ALJ") issued an unfavorable decision after holding an Administrative Hearing. [R. 15-30.] The Appeals Council denied Plaintiff request for review [R. 1-6], rendering the ALJ's June 6, 2024 decision as the final decision of the Commissioner. 20 C.F.R. §404.981. Plaintiff has filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

---

1 In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

2 "Plaintiff's Opening Brief in Support of a Social Security Appeal" [Dkt. 16] has been construed as a motion for summary judgment by the Court, as has "Defendant's Memorandum in Support of Motion for Summary Judgment" [Dkt. 17].

## II. The ALJ's Decision

In her June 6, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 15-30.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 1, 2020, the alleged onset date. [R. 17.] At Step Two, the ALJ found Plaintiff had the severe impairments of osteoarthritis of left lower extremity; osteoarthritis in knees; degenerative changes of hips; diabetes mellitus (diabetes); hypertension; hyperlipidemia; venous stasis; neuropathy; and obesity. [R. 18.] The ALJ found several ailments to be nonsevere (*i.e.*, imposing no limitation on Plaintiff's ability to perform work activity lasting or expected to last for at least twelve continuous months), including lower extremity ulcers and edema; obstructive sleep apnea; respiratory disorders; constipation; and seizure disorder/epilepsy. [R. 18-19.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926). [R. 19.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: he can lift and/or carry 20 pounds occasionally and 10 pounds frequently, never climb ladders, ropes, or scaffolds, occasionally climb ramps/stairs, balance, stoop, crouch, kneel, and crawl, and must be allowed to use a cane as needed to get to/from his workstation and not be required to walk over uneven terrain for work purposes. [R. 22.] At Step Four, the ALJ determined Plaintiff was capable of performing his past relevant work as a service clerk. [R. 29-30.] Accordingly, the ALJ found Plaintiff was not disabled from the alleged onset date through the date of the decision. [R. 30.]

## III. Social Security Regulations and Standard of Review

The court's scope of review is limited to deciding whether the final decision of the

Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). "This is not a high threshold; it requires only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (cleaned up) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)). While reviewing a Commissioner's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion, which is satisfied by an "adequate[] discuss[ion of] the issues and evidence involved in the claim." *Hess*, 92 F.4th at 676; *Dunn v. Saul*, 794 F. App'x 519, 522 (7th Cir. 2019); *see also Tremayne G. v. O'Malley,* No. 21-cv-1541, 2024 WL 1214753, at *2 (N.D. Ill. Mar. 21, 2024) ("Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion.") (signals and citation omitted).

## III. Discussion

In the instant matter, Plaintiff alleges, *inter alia*, that the ALJ improperly evaluated Plaintiff's treating providers' opinions, resulting in the RFC being unsupported by substantial evidence. The Court finds merit to this argument and it is enough to warrant remand of this matter, as detailed below.

On August 4, 2023, Susan Hudec, M.D., completed a Diabetes Mellitus Residual Functional Capacity Questionnaire on Plaintiff's behalf. [R. 857-60.] Dr. Hudec, who had treated Plaintiff for the prior ten years since approximately August 2013, explained that Plaintiff is diagnosed with uncontrolled type 2 diabetes mellitus with hyperglycemia, hyperlipidemia, unspecified

hyperlipidemia, and diabetic polyneuropathy associated with type 2 diabetes. [R. 857.] Dr. Hudec opined that Plaintiff could sit, stand, and walk for less than 2 hours in an 8-hour workday, could rarely lift and carry less than 10 pounds, and rarely twist, stoop, crouch/squat, climb ladders, and climb stairs. [R. 858-59.] She stated that Plaintiff is incapacitated from any and all work, and Plaintiff's impairments will likely produce good days and bad days. [R. 860.]

In her decision, the ALJ evaluated Dr. Hudec's opinion as follows:

> overall, the undersigned finds Dr. Hudec's assessment to be unpersuasive, as the language "incapacitated from any and all work" is inconsistent with the function-by-function analysis used by the Social Security Administration to determine disability. Further, Dr. Hudec opined that, during a typical workday, the claimant will "frequently" experience pain or other symptoms severe enough to interfere with his attention and concentration needed to perform even simple work tasks. However, a concern for the claimant's ability to sustain concentration is not seen in the record. Rather, the evidence indicates the claimant can independently attend and participate in doctor's appointments, and, in his Function Reports, the claimant contends he can pay attention for hours (or a "very long time"), finish what he starts, and follow instructions well. While Dr. Hudec references treatment notes from a June 2023 visit to support her findings, such notes do not demonstrate concern for the claimant's attention/concentration, nor explain why the claimant is "incapacitated" and unable to sustain work activity. Rather, his physical examination during this treatment visit was unremarkable, with the claimant exhibiting full orientation.[3] While the treatment notes referenced by Dr. Hudec indicate the claimant failed to visit his endocrinologist for a period of time, there is no evidence in the record showing this loss of contact was due to medical reasons. Rather, treatment notes show it was due to the claimant's lack of insurance.

[R. 28 (citations omitted).]

However, when assessing Dr. Hudec's opinion, the ALJ wholly failed to address the portion of Dr. Hudec's opinion that Plaintiff could sit, stand, and walk for less than 2 hours in an 8-hour workday, could rarely lift and carry less than 10 pounds, and rarely twist, stoop, crouch/squat, climb ladders, and climb stairs. [R. 28 (referencing 858-59).] Instead, the ALJ focuses on discounting Dr. Hudec's opinion that Plaintiff will have issues with attention/concentration and that Plaintiff is

[3] The Court notes that the record of this "physical exam" in no way refers to Plaintiff's physical capabilities but describes the unremarkable condition of Plaintiff's eyes, ears, nose, mouth, throat, neck, skin, hair & nails, etc. [R. 863.]

"incapacitated" and unable to sustain work activity. *Id*. It appears the ALJ largely picked a single point of focus, which was that Dr. Hudec opined that Plaintiff's "pain or other symptoms" would constantly interfere with his attention and concentration. [R. 867.] The Court acknowledges that the ALJ largely adequately addresses the reason for discounting Dr. Hudec's opinion.[4] Yet the ALJ fully missed the mark when she failed to address the physical limitations within Dr. Hudec's opinion.

In response, the Commissioner points out that an ALJ is subject "to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (making clear that the "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning"); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (ALJ must "articulate at some minimal level his analysis of the evidence"). [Dkt. 17 at 4.] While true, the Court finds that here, the ALJ overlooked critical portions of Dr. Hudec's opinions and failed to address those physical limitations when rejecting the opinions, which calls into question whether the ALJ found these portions of the opinion unpersuasive or just simply chose to ignore them. The Court does not find the ALJ's articulation to meet the "minimal level" required of her with respect to her rejection of Dr. Hudec's opinion of Plaintiff's physical limitations.

Next, Matthew Spiewak, D.O., completed an August 7, 2023 Physical Impairment Questionnaire. [R. 866-69.] Dr. Spiewak, who has treated Plaintiff since 2011, noted that Plaintiff is diagnosed with seizure disorder, venous stasis dermatitis of both lower extremities, chronic edema, type 2 diabetes mellitus with peripheral circulatory disorder, diabetic mononeuropathy associated with type 2 diabetes, and lymphedema of both lower extremities. [R. 866.] Dr. Spiewak determined

[4] The ALJ did not, however, address Dr. Hudec's opinion that Plaintiff's impairments are likely to produce "good days" and "bad days" [R. 869], very similar to a fibromyalgia patient, where the SSA has created an entire regulation (SSR 12-2p) directing ALJ's to consider a claimant's longitudinal medical record due to the "good days" versus "bad days" phenomenon. Analogously, the ALJ could have done a better job addressing this aspect of Plaintiff's pain.

that Plaintiff can occasionally lift and carry up to five pounds. [R. 868.] Dr. Spiewak opined that Plaintiff is incapacitated from any and all work and, because his impairments will likely produce good days and bad days, he will likely be absent from work more than three times a month. [R. 869.]

In her decision, the ALJ evaluated Dr. Spiewak's opinion as follows:

> The claimant's primary care physician, Matthew Spiewak, DO, completed a "Physical Impairment Questionnaire" on behalf of the claimant, in which he also opined the claimant is "incapacitated from any and all work," "permanently disabled," and "off any and all work." However, similar to the above, the undersigned finds Dr. Spiewak's assessment unpersuasive, as the language "incapacitated from any and all work," "permanently disabled," and "off any and all work" is inconsistent with the function-by-function analysis used by the Social Security Administration to determine disability. Further, while Dr. Spiewak reports the claimant's symptoms will "constantly" interfere with his attention and concentration, he does not refer to specific treatment notes to support his opinion, and his findings are inconsistent with the record, which shows the claimant can independently attend and participate in doctor's appointments. Per Dr. Spiewak's attached treatment notes, documenting a visit in June 2023, the claimant had an abnormal foot/skin examination. However, Dr. Spiewak does not explain how this abnormality impacts the claimant's functional capacity for work activity. Nevertheless, the undersigned gave some consideration to this abnormal examination in limiting the claimant to standing and/or walking no more than two hours in an eight-hour workday, as prolonged standing and/or walking can aggravate pain/discomfort in the claimant's feet. Additionally, contrary to Dr. Spiewak's notes on the Questionnaire, his attached June 2023 treatment notes provide no discussion as to whether the claimant should elevate his lower extremities. Lastly, while Dr. Spiewak opines the claimant would likely need to be absent from work more than three times a month due to his impairments, he does not refer to any specific treatment notes to support that these absences would be due to medical reasons. Notably, as mentioned above, the record shows the claimant's gaps in treatment appear to be due to a loss of health insurance.

[R. 28-29 (citations omitted).]

Similar to when she addressed Dr. Hudec's opinions, the ALJ also failed to address the physical restriction portion of Dr. Spiewak's opinion where he determined that Plaintiff can occasionally lift and carry up to five pounds. [R. 28-29.] Instead, the ALJ again focused on discounting the portion of Dr. Spiewak's opinion that Plaintiff will have issues with attention/concentration and that Plaintiff is "incapacitated" and unable to sustain work activity. *Id.*

Once again, the Court is left to question whether the ALJ found the physical limitation portion of Dr. Spiewak's opinion unpersuasive or ignored it.

Significantly, the ALJ failed to point to any evidence from another treating or examining source that contradicted these physical assessments from Dr. Hudec or Dr. Spiewak, and it appears the RFC that Plaintiff "can lift and/or carry 20 pounds occasionally and 10 pounds frequently" is based primarily upon the ALJ's lay speculation as to how Plaintiff's impairments may impact his functioning. But it is an error for the ALJ to reject medical opinion evidence in favor of her own lay interpretation of the evidence. *See*, *e.g.*, *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (holding that an ALJ "is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record").

This error is compounded by the fact that the ALJ credited the State agency consultative physicians' opinions over that of Plaintiff's treating providers. This despite the ALJ recognizing that the State agency consultative physicians, Dr. Peterson and Dr. LaFata, did not have the benefit of reviewing Plaintiff's entire medical record. [R. 27-28 ("the State agency medical consultants did not have the benefit of review of the later evidence, including the claimant's hearing testimony and recent treatment notes, documenting the claimant's persistent edema, obesity, and abnormal A1c/blood glucose levels, all of which support greater limitations.") (citations omitted).] It is clear Plaintiff submitted medical records after both the initial denial and the denial upon reconsideration, which the ALJ plainly acknowledged the State agency consultants had not reviewed.[5] As a result, it does not appear any medical expert assessed the entirety of the treatment records produced, which left the ALJ in the improper role of playing doctor.

5 Because the record the ALJ cited to as the later-submitted evidence is 443 pages in total (Exhibit 11F), it is not immediately apparent to the Court whether there were any physical restrictions within Plaintiff's later-submitted records, but this is not dispositive.

While the Commissioner argues that this aspect of Plaintiff's appeal is merely a request to reweigh the evidence by Plaintiff, the Court does not agree. This is particularly true because the ALJ acknowledged that the new, later-submitted medical evidence had changed the picture such that she could not necessarily rely on the opinions of the non-examining State agency physicians. [R. 27-28.]

On the other hand, Plaintiff aptly points out this error is not without harm here, because the vocational expert ("VE") did not have the benefit of evaluating what jobs Plaintiff could perform with the proper explanation of Plaintiff's physical limitations, which Plaintiff argues were necessarily flawed because the ALJ impermissibly interpreted the significance of the new medical evidence on her own and her questions to the VE reflected *these* limitations rather than limitations opined by a medical professional. *See Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question [s]he poses to the vocational expert must incorporate all of the claimant's limitations supported by medical evidence in the record.").

In sum, remand is required because the ALJ impermissibly overlooked key portions of Plaintiff's treating providers' opinions and failed to address those limitations when rejecting the providers' opinions, and then seemingly played doctor to fill in gaps left after rejecting those providers' opinions and acknowledging that the State agency consultants had not reviewed all of the medical records. This led to a flawed RFC, particularly with respect to Plaintiff's physical limitations, as the Court simply cannot tell how the ALJ came to include those particular restrictions within the RFC.

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. The Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff other than those discussed herein. Plaintiff's motion

for summary judgment [Dkt. 16] is GRANTED and the Commissioner's motion for summary judgment [Dkt. 17] is DENIED.

**ENTERED: September 18, 2026**

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge